Case number 24-3710, Ulysses Feagin v. Mansfield Police Department, et al. Argument not to exceed 15 minutes per side. Mr. Luke, you may proceed for the appellant. Thank you. Good morning. May it please the court, counsel, Mel Lutz on behalf of the appellants. I'd like to reserve three minutes for rebuttal, please. All right. This case involves a pretty unique situation where a crime is committed in the presence of police officers. That doesn't happen a whole lot. It happened in this case when Mr. Feagin's vehicle was traveling directly toward a vehicle operated by Officer Boggs. Broad daylight, Boggs was in a marked police cruiser, and if Boggs had not pulled off the road, they would have had a head-on collision. And it just made no sense to them why somebody would do that. It's a crime committed in their presence. They were obligated to investigate. They conducted a traffic stop. The traffic stop did not go particularly well in that Mr. Feagin did not immediately pull over. Instead, he drove to a parking lot of an apartment complex, which was heavily populated. I think we're pretty familiar with the facts. As you know, when these cases come to us on interlocutory appeal, our view is sort of limited. And we can't just accept the story that you give us, but there's sort of a hierarchy of evidence, as I understand. So do you agree? I think the first thing we would look at is the video. And whatever is the things that are clear from the video, we can accept as sort of part of the background evidence or record. And then I would go to Feagin's testimony or his affidavit as we accept the story that he tells. And then for points that he hasn't addressed, we can look to what the officers have said in their testimony or in their affidavits. Does that sound right to you in terms of how I would think about sort of the background evidence that I have to accept? It does to some extent. It sort of has to, right? That's our rule. It does, Your Honor. You accept that, and then we would go forward and look at the case for that. Because the video shows a lot. I think a lot of things you're describing are pretty clear from the video. It does, but when I first started doing this work, we didn't have dash cams or body-worn cameras. Now we have them. We have them in 4K. That's my point. I think we start with the video, and it shows a lot of the evidence that you're referring to. Right, but the videos show something that happened from what is recorded on a video camera. It doesn't show everything, though, and I think there's sometimes an inclination on the part of the court to say, well, I can see it all. I'm in the same position as the officer when I review that video. And that's simply not the case, particularly in this case. But that's to Judge Radler's point. I mean, it makes sense. His hierarchy is the way we've set it up. Scott V. Harris sets up the video, so that's the Supreme Court. And then we've interpreted that in Bell and talked about how important the video can be. We get, I think we've said multiple times, we understand. We're not saying the video replaces what was going on in the scene. But when it's uncontradicted, we can accept what happened and look at the video, regardless of what anyone else says. Or when it blatantly contradicts what either the officers or the plaintiffs say, we can accept the video for that. That seems like a non-remarkable proposition. No, and I'm not disputing that, Your Honor. And it's a great tool for law enforcement, actually, the fact that they have body-worn cameras and we're able to have a record of what is said and what is done. However, in this case, paragraph 14 of Officer Boggs' affidavit, which was part of the record below, he indicates that he observed Mr. Fagan. First of all, there were guns in the car, bullets at the scene when Mr. Fagan was extricated from the vehicle. And he continued to resist. And there was a real concern. There was a crowd forming in the parking lot. We had guns that the officers could see. We had a resistant person. And, of course, we know now, having reviewed the video, that he was ultimately secured in handcuffs. But it's kind of like... Some of the things you're saying, I didn't see on the video. I didn't see much of a crowd. Some of the things are denied. Mr. Fagan denies your officers' contention that bullets were found at the scene and all that. Some of these things are just disputed. Isn't the problem here that we're trying to decide is whether the use of the deployment of the taser at the time it was deployed was justified or not? And, obviously, the parties dispute that. So we look at the video to see if that can help us out. And it's not clear that video doesn't really resolve that issue. It's not clear whether the use of the taser was required at the time it was used. When Mr. Fagan was pulled out of the vehicle, he was put against the car, and almost immediately the taser was used. And it's not clear that it was required at that point in time. Maybe you could address that. Yes, sir. It goes to what the video doesn't show. For example, the trial court makes a point of noting that the bullets that were reported by the officers cannot be seen in the video, perhaps because they are too small. And the perspective of the video doesn't show where the guns were. But the issue is the officers saw it. The officers knew it. It's in Boggs' affidavit. And it goes to the totality of the circumstances, Your Honor, because this is going through the mind of the officers at the time. They're not thinking to themselves, gee, I hope this is visible on the video. In real time, they're dealing with it. I mean, they take him out of the vehicle. Whether there are bullets or not, isn't the issue whether he was resisting such that the taser needed to be deployed? Not whether there were bullets found in the car or not found in the car. They're trying to apprehend this individual, I guess about to put the handcuffs on. So, I mean, whether the bullets were found on the floor of the car or wherever in the car is almost irrelevant. The issue is, was he resisting or not resisting? If he's not resisting, the use of the taser was not appropriate. If he was resisting, depending upon the extent and nature of the resistance, maybe the use of the taser was appropriate. But if that's contested, he claims he's not resisting, and if the video doesn't resolve it, why wouldn't that be a disputed material fact that's best resolved by the jury? Well, I think objective reasonableness, as the court indicated in Scott v. Harris, is a question of law. And in this instance, the issue is we take the position that the trial court misapplied the law when taking into consideration the evidence before it, particularly with regard to Officer Boggs' affidavit, indicating what these threats were. And, of course, we've seen the video now. We know how it turns out. It's like going to a movie when you've read the book. You see the facts as they unfold in the movie differently because you know what's coming. If you've never read the book and you don't know anything, you perceive the facts differently. The officers in this case are perceiving in real time what's going on. There's a threat. They perceive Mr. Fagan's physical actions as an immediate threat to them. They've got a crowd forming. They've got to get this man under control quickly. The taser is a vehicle by which they can do that with minimal permanent impact on Mr. Fagan. Admittedly, not a fun experience, but it allows them to take him into custody safely, and for his safety and for the safety of everybody else there. Officer Moore made a split-second decision. The law is clear about split-second decisions and the dangers of hindsight, particularly when looking at a video frame by frame. That's not the way it happened for them, not frame by frame, not slowed down, but in real time, and they were very worried about getting Mr. Fagan under control. The taser had to be deployed. It had to be deployed quickly. It wasn't particularly effective, as it turns out, particularly with regard to the drive stump. How was it that he needed to be gotten under control to that extent? Obviously, he was uncooperative because he rolled up the window and didn't immediately exit the vehicle when instructed to do so. But when he was pulled out of the vehicle, at that point I didn't see any resistance. In other words, you say they needed to get him under control. How was he not under control and needed to be gotten under control? They just have him standing against the car, apparently not resisting, and he's tased anyway. I guess my answer to that, Your Honor, is the officer's perception was he was continuing to struggle. Even in the appellee brief, they indicate that the officers, they describe it as the officers fumbling with the handcuffs. Well, they're not fumbling. They're actively in a fight with Mr. Fagan because he will not cooperate. He is continuing to resist, and they're trying to cuff him. That's why you see that on the video. What fight are you talking about? We must have seen different videos, you and I. There was no fight going on. There wasn't even any resistance at the time the man was tased. Where do you get the notion that there was a fight going on? When you look at the video, you don't have a situation where the man places his hands behind his back and is cuffed voluntarily. What you have is a man who is continually trying to keep the police from cuffing him. He knows what's happening. He knows what's going on, obviously. He's been resistant from the very beginning, going all the way back moments before to trying to run the officer off the road. So all of this is going through the officer's minds at the time. This is an exigent circumstance, so to speak, where they must act quickly because they have no idea who this guy is. They don't have any context. They need to get him under control, and he is not cooperating in that respect. He is resisting. And the law with respect to the objective reasonableness of tasing is that it can be done when someone is resisting, and it should be stopped when someone has stopped resisting. And we accept that. We simply take the position based upon Officer Boggs's statement that Mr. Fagan was continuing to resist, and that is why he was tased. And it's fortunate that the situation was ultimately resolved in a way that brought him under control. Although, as the record indicates, he did continue to resist after that and had to be also exposed to O.C. spray because his resistance continued even after he was put in the police car. So this is just a person who was resisting from beginning to end all the way down the line, and the officers employed the tools at their disposal to bring him effectively under custody. Can I ask you about your deliberate indifference claim? The district judge said that you basically didn't brief that at summary judgment, I think. That is true. Probably something that gets done. Mr. Fagan was pro se at the time. He was incarcerated. So the discovery that we conducted wasn't what you would have conventionally where you have depositions, et cetera. So he conducted discovery via request for production of documents. All of his discovery relative to the medical treatment claim, the deliberate indifference claim, was directed toward the county, was directed toward the jail. And we kept telling him, we don't have these documents. We're not the jail. We're not responsible for your medical care. And that's the sole focus of it. When you go back and look at his complaint, it's sort of a cryptic reference. And, again, repeatedly makes reference to his time in jail. Once you got the summary, this isn't a perfect resolution, but once you got the summary judgment decision, did you go back to Judge Calabrese and say, wait a minute, we were not noticed. These claims were even live or these were part of the case? We did not, Your Honor. To be honest, we were very surprised by the outcome. And so we did not attempt to revisit it by like a motion for reconsideration. That's not preferred necessarily. But there are circumstances where you can kind of be taken off guard. That might be one solution.  Thank you, Your Honors. Thank you. You may proceed. May it please the Court. Rachel Jensen representing the appellee, Mr. Ulysses Fagan. I'd like to begin by addressing this court's jurisdiction over the appeal. The appellants have brought two challenges to the district court's order, and this court lacks jurisdiction over both. So I'd like to pick up on the questions regarding this court's jurisdiction over Officer Moore's challenge to the excessive force claim. Do you disagree with my hierarchy of how we look at the evidence? Yes, Your Honor, and you're absolutely right. That is required by Scott v. Harris. I will note appellants don't ask this court to review the video evidence, and actually quite to the contrary, they insist that the video evidence is not as credible as the evidence that they present. Does that mean we ignore it? So this is a context in which the court's jurisdiction turns entirely on the nature of the challenge that the appellants actually bring. And in this case, the appellant has not brought a legal challenge to the district court's denial of summary judgment on the excessive force claim. So they did not designate the videos as relevant record evidence. They did not submit the videos to this court for review. They did not ever explain in their briefing how the videos might even support their position. And then on reply, they actually argued, and this is a quote. This is a quote. They actually argued the balancing act required when there is video versus the police officer's recitation of the facts, meaning the video is in contradiction to the police officer's recitation of the facts, was simply misapplied by the trial court. I mean, that's a good argument. Can I ask you, related to the video itself, just because I've now watched the video, it seems to me it supports everything the officers were saying in spite of their brief all the way up to and then there's a question at the time they pull Mr. Feagin out of the car, right? So it seems to me everything up till then corresponds with what the officers are saying and actually blatantly contradicts some of what Mr. Feagin is saying. Like he says he ran up and banged on the windows. I watched the video. He walks up. The windows are still down. He starts rolling up the windows as he's walking up to the car. He's clearly talking, trying to talk to Mr. Feagin. Maybe the appellants didn't watch the video, but it seems to pretty clearly support them. And then there's the question of as they extricate him from the car, and you need to use the taser, is he resisting? The Supreme Court in Rivas-Viega, I'm probably butchering the pronunciation, says we should look at a few things as we go through it. And it's from, and they make pretty clear it's from the officer's perspective. And so the car is rolling back. He's rolling up the windows. He's locking the door. The officer apparently sees guns, bullets fall out when they get him out. I mean why isn't it, what case clearly establishes that at that point they can't use force? Sure, Your Honor. So there are hundreds of cases in this court, in the Sixth Circuit, that say that it is unreasonable. It is clearly established that it is unreasonable to tase a person who is not resisting arrest or who has stopped resisting arrest. But then if there's a consistent, as Judge Murphy said and as the district judge says here, it's the events fall in the gray area between active and passive resistance, is what the district judge said. And Judge Murphy points to cases and points out that that is an area where we basically, I can't remember how he starts his opinion, but he says, does the officer have to be 25 percent sure, 15 percent sure? That's a call for the officer that courts aren't equipped to make. So what do you do in that instance? Because here you have, and you even in the video can see his hands fly out. I get your best argument is the first argument you make, which is they're not making these arguments. But I'm just curious what a court should do in that circumstance. Sure. So this is a case where there's a fact dispute as to what Mr. Fagan was physically doing. And some of that is visible from the video. So, for example, Officer Moore argues in his motion for summary judgment that he had to tase Mr. Fagan to secure his hands behind his back. But you see very clearly from the video that his hands were already secured behind his back before Officer Moore tased him. So I actually think that if you look at the video, that it's a pretty clear affirm in our favor. But the other question I hear you asking is about what we do when there's sort of a gray area about is this person resisting arrest or not resisting arrest, and we sort of can't tell from the video. Isn't that what the district court said? Yeah. So the district court did say that there was a gray area, and I think what the district court meant by that was that a jury should decide. A jury should decide. I thought, am I, I'm quoting, so you tell me if I'm wrong, and you're welcome to look. The events fall in the gray area between active and passive resistance. That comes directly from Judge Murphy's opinion. Right? I mean, he's not quoting Judge Murphy, but he says that. Then Judge Murphy says that in Browning. And Judge Murphy points to cases saying, well, that's where we defer to the officer in that instance. So there may be some overlap in framing or in phrasing between the district court's opinion and Judge Murphy's opinion. I don't think that's intentional. I think what the district court was pretty clearly saying in its opinion was that looking at the video, a reasonable jury could conclude that Mr. Fagan was not resisting arrest or was resisting arrest, and ultimately those are fact determinations that we want a jury to decide. This also mirrors, your friend on the other side cites basically the same language. You say they don't argue the point, but they cite Rudloff v. Gillespie. They say the facts are not in dispute, and Officer Moore's actions are within, quote, the hazy border between excessive and acceptable force. So not the exact same language, but the same principle, and they cite a case for it. So I take that as them asserting qualified immunity, at the very least, should apply here? So they definitely argue that qualified immunity should apply on the excessive force claim. That argument, though, is based on a factual argument that, in fact, Mr. Fagan was resisting arrest. It's not based on a legal argument, either that the video evidence blatantly contradicts the district court's finding of a genuine issue of fact, and it's certainly not a legal argument that construing the disputed facts in Mr. Fagan's favor, so assuming he was not resisting. You agreed with me this morning on how we should, we all agree on the structure we're supposed to look at. So here's how I, I was just going to take a second, but as I put this all together, here's the evidence that I see that I think, you know, accounts for your client's explanation of events. Your client nearly collides head-on with the officer's cruiser. He then drives for a half-minute more as two cruisers are tailing him. The officers have their sirens and flashers on as your client pulls into the parking lot of a busy apartment complex. His SUV has his back window visibly open, looks like he's been shot out. Your client rolls up his window as the officers approach. The officers order your client to get out of the car three times. The SUV briefly starts to coast backwards. The officers look through the window and see your client reaching toward the passenger-side floorboard. Officer Moore grabs your client twice to get him out of the SUV. Your client leaves his feet in the car. Your client stiffens his body and moves back towards the SUV. Bullets fall from your client's pocket, and live bullets were found later on. At that point, within seconds of being removed from the vehicle, your client acknowledges within seconds that he was tased. During this time, your client is flailing his right arm. You can see that from the video. He and his girlfriend are shouting profanities at the officers, and later on the officers find guns, and we obviously see your client pounding on the police car once he's inside the car. What about that recitation of the facts can we not consider? A lot of those facts are disputed. Well, by dispute, I think your client, like your client filed an affidavit, but he's got to actually affirmatively dispute it, right? If he doesn't mention something, I don't think that would count. In his affidavit? Yeah. And he does mention this dispute of fact in his affidavit. Which parts of what recitation I just gave are disputed? First, the timing on when he was pulled over by the police. You can see in the video as well that they're following him, but Officer Moore doesn't turn on his lights and sirens until Mr. Fagan is already pulling into the parking lot. So that's one. That's pretty consistent with what I said. And then when he arrives into the parking lot, that he puts his car in park, that the— I just said it rolled back. From the officer's perspective, the vehicle rolls back. They don't know why, but they know the vehicle rolls back. Okay. The video shows that. Yeah, the video shows that he's got his brake light on. From an officer's perspective, it doesn't necessarily matter. I mean, they could think he's putting the car in reverse. I mean, the officer's subjective perspective, of course, doesn't matter at all on the qualified immunity analysis. The subjective officer could think that a vehicle rolling back might be the driver trying to reverse and get out of there. Especially, and I'm sorry to tag team, but especially coupled with the rolling up of the windows, the disobeying of the commands, all of that. So I think it's taking a step back. There are—I will mention a couple more— No, sure, of course, yeah. Because I think most of these things, those are the things I gleaned trying to take into account your client's affidavit. Sure. So him, Mr. Fagan, reaching for a weapon in the— I didn't say that. I said he reached towards the middle of the car. He agrees he was reaching towards the gear shift, or he says there's a gear shift in the middle of the car, and that explained his movement. He said that there was a gear shift that he used to put the car in park. If I remember correctly, he was arguing that the gear shift wasn't positioned in such a place that it would have even been feasible for a person to think that he was actually reaching into the floorboard where there were guns. So I think his argument was actually that he was reaching in a different location. But in any event, that he—that Officer Moore comes and bangs on the window. He says in his affidavit that, you know, he did eventually open the door, which you can see from the video that he opens the door, and then he's ripped out of the car. He's all out of his pocket. He does not— He doesn't dispute that. No, I think he— No, but I'm actually not sure that those facts are— So Officer Boggs' affidavit says that he learned that bullets were recovered at the scene, that bullets and handguns were recovered at the scene, but obviously Officer Boggs can't speak to what Officer Moore would have witnessed, so I actually think there's some dispute in those facts anyway. But even if there weren't— So like conceding that there were bullets and handguns at the scene— No, they're bullets that fall out of his pocket as they're removing him from the vehicle. When they see him reaching towards the middle of the car, not necessarily underneath the car, but towards the middle of the car, when they pull him out, they see bullets falling from his pocket. I would think an objective officer would— At that point, they're heightened. They're on heightened awareness. This person may have a gun. Sure. So once you take him out of the car and you get control of him— Well, he says within seconds he's tased. Within seconds of being removed—his affidavit, he says, within seconds of being removed from the vehicle, he's tased. Yeah, so— It happens very quickly, within seconds. Yeah, it's about 45 seconds. No, well, okay. I would say two things. I don't think the video shows 45 seconds. And two, if I was saying 45 seconds, I wouldn't say within seconds. But I would read that more commonly to be very, very quick, within seconds. But you think it's 45 seconds? Yeah, so I think it's from— If you're looking at the Boggs dash cam footage, I think it's from 333 to 412. So you're saying 45 seconds from when the encounter occurs or 45 seconds from when they take him out? From when they take him out. Okay. That's the Boggs. Which one? You know how there's zero, two, and three? Do you remember? You know, I don't— Okay, I'll go look at it. I'm sorry. Don't take your time figuring that out. So once they get him out of the vehicle, this court's case law is very clear that once he is under the officer's control, it is unreasonable to tase him if he is not resisting arrest. So he's standing there with his arms behind his back, each secured by a different officer. As the district court said, he was limp. He's certainly not thrashing around. You don't think the video shows that his right arm was moving? Once his arms were secured by the officer, no, they don't. Oh, but it's when the tasing— The tasing happened within seconds, according to your client's affidavit. So then the question— So that's very, very quickly, and they could have been tased. The tasing seemed to happen while all these other things were happening. It wasn't like it all stopped necessarily, and then the tasing occurred. So Officer Moore grabbed the handcuffs first, and while Mr. Fagan is standing with his arms behind his back, right arm secured by Officer Moore, left arm secured by Officer Boggs, as he's standing there, Officer Moore grabs the handcuffs, tries to put them on. For some reason it doesn't work. Mr. Fagan is certainly not moving. That is visible from the video. And then once he's unable to secure the handcuffs for whatever reason, he then reaches—he's holding Mr. Fagan's right arm with one hand, reaches for his taser with the other, and tases Mr. Fagan. During the time in between when he secured Mr. Fagan's right hand and when he reached for his taser, Mr. Fagan wasn't moving around. More on the left or right when you're looking. He's on the right. He's on the right. And when you're looking at the videos, it's important to remember as well that the question is whether a reasonable officer would have known that Mr. Fagan had stopped resisting arrest. And in this particular case, the court reviewed the video evidence and determined that a jury could absolutely have made that determination, that Mr. Fagan certainly was not resisting arrest so violently that Officer Moore had to tase him to secure his hands behind his back and prevent him from reaching into the car, contrary to what Officer Moore stated in his— I mean, because, Rudolph, the case they point to says disobeying orders, right?  And so he clearly was disobeying orders. I guess the question you're pointing to is you're saying he wasn't disobeying orders when he was taken out of the car. That's correct. So this court's case law says that if you stop resisting, then it is unreasonable to tase you. And that's for a few reasons, right? I mean, looking at the Graham factors, which is what we look at for excessive force cases, you don't satisfy two or three of the Graham factors, so you're not presenting a danger to the officer if you're standing there secured and you're not resisting arrest, even if you were resisting arrest before. And you're certainly not satisfying the third factor for resisting arrest. I appreciate you going through the record with me. I think we probably agree that a lot of what you were saying and some things that I was saying too were viewing the video and drawing conclusions from watching the video.  And I see that I'm out of time. I would like to briefly just conclude and ask that the court dismiss this appeal for lack of jurisdiction. The second argument you make, just so I understand it, it's pretty clear. You're just saying he didn't brief this below. This is the pepper spray related to. And what they're saying is it couldn't have been us. But your point is just pretty simple, right? He didn't brief this below. He has to go back and do that if he wants to appeal it. Is it that or is it we don't have jurisdiction because X? Because he's not asserting qualified immunity. So go ahead. Sure, so on the deliberate indifference claim? Yes, I'm sorry. I didn't frame it. No, no, absolutely. I understand what you're talking about. So on the deliberate indifference claim, our argument is that the district court denied summary judgment but didn't deny qualified immunity because it was never presented with an opportunity to decide qualified immunity in the first place. Thank you. Thank you. Any rebuttal? Thank you. Just on the immediacy of the tasting, the trial court did address there was a question about the warning issue. And the trial court addressed that the immediacy of Officer Moore's need to use his taser was such that a warning, there was no time for it. And certainly the court then went back and readdressed that in the failure to intervene claim against Officer Boggs, that Officer Boggs would not have had an opportunity to intervene anyway because it was such a dynamic situation. It was developing so quickly. And the other thing I would say is that when you have your hands on somebody, that is the best way to assess whether you're getting resistance or no resistance, right? And Officer Moore has one hand on Mr. Fagan. His other hand is pulling his taser. And so necessarily you only have one hand on the suspect if you're trying to have the taser assist you. But as your friend on the other side points out, Officer Boggs had the other arm. At some point in time, Officer Boggs steps forward. But there is a gap there. And again, I don't know how many seconds it is, but there's a period of time there where only Officer Moore has his hand on Mr. Fagan and is trying to get his taser out. So it's a rapidly developing situation. It's very dangerous at the time. We know that it worked out now, but they didn't know that at the time. So they were responding. Your friend on the other side, we were discussing the timing. Yes, sir. I was just going from the affidavit filed by Fagan where he said that he was tased within seconds of getting out of the vehicle. How do you characterize the timing? We obviously can look at the video. We have one statement that that was sort of 45 seconds, so we'll look at that again. But how do you sort of describe the timing? I describe the timing from the standpoint of the officers. It was very quick. Now, how many seconds that was, I don't know. But from their perspective, he wasn't complying fast enough to satisfy their concern that their safety and his safety and the safety of the crowd was in jeopardy. So however fast that happened in terms of seconds, it wasn't fast enough from their perspective based on the totality of the circumstances, based on what a reasonable officer perceived at the time. They needed to bring him under control, and by that I mean both hands handcuffed behind his back as quickly as possible. Until they do that, those guns are a threat. He's a threat. He's a threat to them. He's a threat to the crowd. They need to bring him under control, and they tried to do that. Can I ask you, because I just looked at it, he's pulling, I agree with you, he's pulling him out alone at first with one arm, but then Boggs comes up. Are you saying he tased him before Boggs ever got there? No, Boggs is present, Your Honor. But I guess what I'm saying is if we're looking— Why does the one-arm thing matter? Like if they've each got an arm, I'm not sure I'd follow your initial point. I guess my point is that from the officer's perspective, until he's secured in handcuffs, he's not secure. And so whether an officer has a hold of his arm or whatever, he's continuing to resist. It's pretty clear if he wasn't continuing to resist, what would you see on the video? You'd see the guy putting his hands behind his back and the officer's cuffing him. That's not what's going on there. He is resisting just as he did from the very beginning and just as he did after they put him in the police car. He's resisting from beginning to end, and this was peaceably brought under control, but the taser was necessary, and that's what it's for, for his safety and for Fagan's safety as well. With that, Your Honors, I'm out of time. Thank you. All right. Thank you, and the case shall be submitted.